UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:11-cr–38-jgm-1 |
| | : | |
| AUGUST NOMMIK, | : | |
| Defendant. | : | |
| | : | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS
(Doc. 27)

I.    Introduction

Defendant August Nommik (Nommik) is charged with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  (Doc. 10.)  Nommik moves to suppress statements made to law enforcement officers at Norwich University on March 1, 2011, arguing his Fifth Amendment constitutional rights were violated.  (Doc. 27.[1])  The government opposes the motion.  (Doc. 26.)  The Court held an evidentiary hearing on January 11, 2012, and heard testimony from Agent Michael Estrella, Mr. Richard Bergen, and Agent Scott Murray.  Nommik and the government filed further briefing addressing, inter alia, the relevance of the Uniform Code of Military Justice.  (Docs. 33, 34.)

For the reasons stated below, the Court denies Defendant's motion.

II.    Background

The following facts are taken from the evidence presented at the January 11 hearing, and from other documents submitted as evidence by the parties.

_____

[1] Nommik's September 28, 2011 motion to amend his motion to suppress, filed a day earlier, was granted on October 12, 2011.  See Docs. 23, 24, 25.

1

At the time of the interview, Nommik was a student at Norwich University in Plainfield, Vermont. He was a member of the corps of cadets which means he was also a member of the Reserve Officers' Training Corps (ROTC). On March 1, 2011, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) visited Norwich to interview Nommik because they had information suggesting he was involved in firearms trafficking. The agents, Michael Estrella, a Department of Homeland Security Border Patrol agent task-forced to ATF, Scott Murray, a Special Agent for ATF and the case agent on this case,[2] and two other agents went to the Commandant's office where they learned Nommik had an evening class that day.

The agents left the campus and returned to the Commandant's office later that evening. They met with Richard Bergen, a Senior Enlisted Instructor for the corps of cadets, who walked them to the building where Nommik's class was being conducted. Mr. Bergen was wearing a camouflage uniform. Because the class was in session, the three men[3] waited at the end of the hallway until a student exited the class. Mr. Bergen requested the student ask Nommik to come out of the class. Nommik came out with the rest of the class, apparently on a break, and Mr. Bergen asked Nommik to come with him, informing him that gentlemen wanted to speak with him. Hr'g Tr. at 61-62. Agent Estrella introduced himself and said he would like to speak with him. Id. at 30. Nommik returned to the class to retrieve his belongings, and the four (Agents Estrella and Murray, Mr. Bergen, and Nommik) left the classroom building and walked to Jackman Hall, the building housing the Commandant's office.

---

[2] At the time of the interview, Agent Estrella was the case agent, however, as he was being transferred to New York, Agent Murray was assigned to be the case agent upon Agent Estrella's transfer. Hr'g Tr. at 80.

[3] Mr. Bergen testified three agents were with him at the classroom building. Hr'g Tr. at 56. Agents Estrella and Murray testified only the two of them waited with Mr. Bergen in the classroom building. Id. at 29, 83-84.

Mr. Bergen described his role as "simply one of logistics, providing a place for two parties to meet where they could talk." Hr'g Tr. at 62. He testified he did not instruct Nommik that he had to answer the agents' questions and in fact he had no authority to do so. Hr'g Tr. at 64. Nommik was not obligated to have Mr. Bergen's permission before he could leave the conference room or the building. Id. at 64-65. Mr. Bergen did not hear raised voices or angry tones coming from the conference room and did not see weapons on the agents. Id. at 64-66.

Mr. Bergen opened the door to an average size conference room and left the agents and Nommik. The interview began at 7:15 p.m. Hr'g Tr. at 32, 44. Agent Estrella explained to Nommik he was under no obligation to speak with the agents, was free to leave at any time, and was not under arrest. Id. at 14, 45, 87-88. Agent Estrella testified Nommik indicated he understood by shaking his head yes. Id. at 15. Agent Estrella initially began the conversation but Nommik was hesitant to speak. Agent Murray took over the questioning. Id. During the interview, Nommik admitted he took guns to Canada and exchanged them for drugs. Id. at 15-16. Near the end of the interview, Agent Mostyn entered the room to provide the ATF form used to record a statement that Nommik signed at 9:10 p.m. Agent Murray hand wrote the document based on Nommik's statements during the interview, read it aloud and placed it in front of Nommik for him to read. Id. at 91-92. Nommik then signed the form. Id. at 91. During the interview, Agents Estrella and Murray were in street clothes with their weapons concealed. Id. at 10, 46, 95. Both testified the tone of the interview was conversational with no raised voices. Id. at 16, 95. Nommik, who was dressed in a camouflage uniform, id. at 77, was not physically restrained. Id. at 95.

At the conclusion of the interview at 9:30, Agents Estrella, Murray, Mostyn, and Gucciardi -- who had been outside the conference room -- left the campus. Nommik voluntarily rode with Agents Estrella and Murray to near his off-campus apartment. Hr'g Tr. at 19-20.

III.   Discussion

An individual must be advised of Fifth Amendment rights before custodial interrogation. Miranda v. Arizona, 384 U.S. 436 (1966).  A person has the right to remain silent and request an attorney while in custody and any interrogation must stop until an attorney is present.  Id. at 474. The government bears the burden of establishing by a preponderance of the evidence law enforcement officers properly advised an accused of his Fifth Amendment rights and that he made a knowing and voluntary waiver of those rights.  Id. at 444; Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Ramirez, 79 F.3d 298, 304 (2d Cir. 1996).  Here, the government argues Defendant was not in custody, so no Miranda rights were necessary, and his statements were made voluntarily.  (Doc. 26 at 5-9.)

Custodial interrogation has two components:  the individual is in custody and is questioned with investigative intent.  United States v. Rodriguez, 356 F.3d 254, 258 (2d Cir. 2004) (citing United States v. Morales, 834 F.2d 35, 38 (2d Cir. 1987)).  An individual is "in custody" if questioning was "conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." Id. (quoting Morales, 834 F.2d at 38).  As in a Fourth Amendment analysis, to determine whether an individual is "in custody," the court must decide whether a reasonable person would have felt "at liberty to terminate the interrogation and leave."  Thompson v. Keohane, 516 U.S. 99, 112 (1995); see also J.D.B. v. North Carolina, 131 S. Ct. 2394, 2402 (2011) (quoting same).  In the absence of a formal arrest, the court must consider whether law enforcement officials acted or spoke in a manner that conveyed the message they would not permit the individual to leave. United States v. Ali, 86 F.3d 275, 276 (2d Cir. 1996).

To warrant suppression, a defendant must also be questioned with investigative intent. This component of custodial interrogation requires the inquiry be "conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought." Rodriguez, 356 F.3d 254 at 259 (quoting Morales, 834 F.2d at 38). The questions asked must be likely to elicit an incriminating response. Id.

The Court finds Nommik was not in custody. The undisputed testimony established Nommik was not under arrest during the March 1 interview. The agents expressly communicated to him that he was free to leave at any time and did not have to speak with them. These statements, and Nommik's indication that he understood, establish the agents did not act or speak in a manner that conveyed to Nommik he was not allowed to leave. Further, while the agents were armed, Mr. Bergen and Agents Estrella and Murray testified the weapons were concealed. The interview lasted approximately two hours and did not extend late into the night. Nommik was never physically restrained, the conference room was of average size, and the door was unlocked. Though Nommik was never offered food or drink, and the interview occurred between the hours of 7 and 9 p.m., Nommik has not pointed to any authority requiring food or drink be provided to transform an otherwise innocuous interview into custodial interrogation. The Court finds the circumstances under which Nommik was interviewed would not have undermined a reasonable person's will to resist or compelled a reasonable person to speak.

Nommik argues he was ordered to attend the interview by a Norwich employee, Senior Enlisted Instructor Richard Bergen. Even crediting this assertion, any potential order of Bergen's was contradicted and superseded by the agents' express statement to Nommik that he was free to leave, was not under arrest, and was not required to speak with them. See Howes v. Fields,

No. 10-680, 2012 WL 538280, at *12 (Feb. 21, 2012) (holding inmate taken from cell to conference room for questioning was not "in custody" for <u>Miranda</u> purposes under the circumstances, "especially the undisputed fact [he] was told that he was free to end the questioning and return to his cell").

Nommik also points to the Uniform Code of Military Justice (UCMJ) which forbids any type of interrogation -- custodial or otherwise -- of a military member without a warning regarding the person's right to remain silent.  (Doc. 27 at 7-8 (citing 10 U.S.C. § 831(b))).  As Nommik concedes, the UCMJ does not apply to him.  (Doc. 27 at 8, Doc. 34 at 11.)  He argues he was under the same "subtle coercive pressure that is inherently a part of the military that led Congress to adopt" the UCMJ.  (Doc. 34 at 10.)  The fact that Nommik was a member of the ROTC and corps of cadets at Norwich, and was asked to attend the interview by a "superior," does not convince the Court that, considering all the circumstances, Nommik was "in custody" for <u>Miranda</u> purposes.

Because Nommik was not in custody, the Court does not proceed to inquire whether he was questioned with investigative intent.  <u>Miranda</u> warnings were not required.

IV.    <u>Conclusion</u>

For the reasons stated above, Defendant Nommik's motion to suppress statements (Doc. 27) is DENIED.  This case will be placed on the April 25, 2012 jury draw calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 2nd day of March, 2012.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge